## Mack Estate

*Thomas E. Whitten,* for petitioner.

*Thomas N. Griggs* and *Griggs, Moreland, Blair & Douglass,* for respondent.

*Ralph J. McAllister,* for guardian ad litem.

*John E. McCalmont, P. K. Motheral* and *Reed, Smith, Shaw & McClay,* for legatees.

BOYLE, J., February 10, 1949.—In the above-entitled estate the Pennsylvania estate tax and the Federal

estate tax have been paid with interest by the executors. The taxes and interest are now to be apportioned under the provisions of the Act of July 2, 1937, P. L. 2762, 20 PS §844.

Decedent died testate on September 27, 1940. The will was duly probated in the office of the Register of Wills of Allegheny County, being recorded in Will Book, vol. 249, page 102. Letters testamentary were granted to the executors on October 4, 1940.

The executors filed their first account on June 1, 1944. On October 16, 1944, contemporaneously with the audit of the first account, the executors filed their petition for proration of Pennsylvania estate tax and Federal estate tax.

The total valuation of the gross estate for Federal estate tax purposes is $7,703,034.72.

After allowances for specific exemptions and permitted deductions, the executors paid to the United States a Federal estate tax of $2,222,823.63 plus interest in the sum of $67,712.72.

The Pennsylvania estate tax (the tax levied and assessed under the provisions of the Act of May 7, 1927, P. L. 859), as finally determined and paid, amounted to $336,964.23 plus interest in the sum of $3,408.26.

Included in decedent's net tax estate for Federal estate tax purposes were : (a) Property passing under decedent's will and (b) property not passing under decedent's will (including jointly held real estate, proceeds of life insurance policies, life insurance and property constituting trusts created by decedent during his lifetime).

The property (and its value for Federal estate tax purposes as finally determined) passing under decedent's will and included in the gross tax estate, with the names of the respective beneficiaries thereof, is as follows:

| Paragraph of Will | Name of Beneficiary | Determined Tax Value of Property |
|---|---|---|
| Second | Margaret L. Mack | $ 1,729.50 |
| Third | John Gordon Mack | 125.00 |
| Fourth | James S. Mack | 210.00 |
| Fifth | Margaret L. Mack | 267,000.00 |
| Sixth Life Estate in Indiana Co. Real Estate $81,849.25 Less Deductions 36,485.02 | Margaret L. Mack | 45,364.23 |
| Sixth Remainder in Indiana Co. Real estate 104,150.75 Less Deductions 46,426.11 | James S. Mack | 57,724.64 |
| Eighth (b) 620,875.00—James S. Mack 620,875.00—John Gordon Mack 1,241,750.00 Less deduction for charities 474,375.00 | | 767,375.00 |
| Eighth Remainder of Estate 4,698,711.87 Less deductions 868,953.66 | James S. Mack et al. | 3,829,758.21 |
| | Total Tax Value of Testamentary Property | $4,969,286.58 |

Property not passing under the will of decedent but included in the gross estate for Federal estate tax pur-

poses, together with the tax valuation and the names of the respective beneficiaries, is the following:

| Kind of Property | Beneficiary | Valuation | Net Taxable Value |
|---|---|---|---|
| 1. Life Insurance | Margaret L. Mack $ 4,205.17 | | |
| | Less pro rata exemption | 548.00 | |
| | | | $ 3,657.17 |
| 2. Entireties Real Estate | Margaret L. Mack | 1,355.00 | 1,355.00 |
| 3. Life Insurance | John Gordon Mack | 4,798.50 | |
| | Less pro rata exemption | 628.00 | |
| | | | 4,170.50 |
| 4. Life Insurance | James S. Mack | 4,798.50 | |
| | Less pro rata exemption | 628.00 | |
| | | | 4,170.50 |
| 5. Life Insurance Trust dated Apr. 28, 1933; Commonwealth Trust Co., trustee (exhibit C) | | 292,609.92 | |
| | Less charitable deductions | 119,016.53 | |
| | | 173,593.39 | |
| | Less pro rata exemption | 38,196.00 | |
| | | | 135,397.39 |
| (Commonwealth Trust Co. is trustee in the following.) | | | |
| 6. Inter Vivos Trust dated Aug. 22, 1935 (exhibit D) | John Gordon Mack et al. | 268,501.20 | 268,501.20 |
| 7. Inter Vivos Trust dated Aug. 22, 1935 (exhibit E) | James S. Mack et al. | 376,723.19 | 376,723.19 |
| 8. Inter Vivos Trust dated Dec. 29, 1936 (exhibit F) | Arthur W. Watherwax, Jr., et al. | 47,214.11 | 47,214.11 |

| Kind of Property | Beneficiary | Valuation | Net Taxable Value |
|---|---|---|---|
| 9. Inter Vivos Trust dated Aug. 22, 1935 (exhibit G) (Farmers Bank & Trust Co. of Indiana, Pa., is trustee in the following:) | Margaret L. Mack et al. | 340,903.13 | 340,903.13 |
| 10. Inter Vivos Trust dated Jan. 19, 1937 (exhibit I) | Mary Louise Groat | 1,006.96 | 1,006.96 |
| 11. Inter Vivos Trust dated Jan. 19, 1937 (exhibit J) | Velda R. McHenry | 5,392.67 | 5,392.67 |

|  |  |
|---|---|
| Total Tax Value of Non-Testamentary Property | $1,188,491.82 |

A recapitulation shows the following:

Net Tax value of Testamentary Property, $4,969,286.58

Net Tax Value of Nontestamentary Property, 1,188,491.82

Total Net Taxable Estate, $6,157,778.40

The second, third and fourth paragraphs of the will are specific bequests. The fifth paragraph is a pecuniary legacy. As testator did not direct otherwise in his will, these bequests and the pecuniary legacy are required by the Apportionment Act of 1937 to bear their proportionate share of the estate taxes.

The sixth paragraph of the will is a specific devise of real estate to testator's widow for life with remainder in fee to his son, James S. Mack. Under the provisions of the Act of 1937 the estate tax liability on the life estate and on the remainder is required to be paid out of the corpus without apportionment between the life estate and the remainder. The estate tax liability attributable to the life estate and remainder will be apportioned to the remainderman, James S. Mack.

The seventh paragraph of the will was carried out by testator in his lifetime, is ineffective, and not involved in this proceeding.

The principal question in the case at bar arises under paragraph 8 (b) of the will, which is as follows:

"I direct that my Trustees shall set aside Twenty Thousand (20,000) shares of my common capital stock of G. C. MURPHY COMPANY for the benefit of my sons JOHN GORDON MACK and JAMES S. MACK and the institutions hereinafter mentioned. At any time during the first ten (10) years after the date of my death my Trustees shall sell and deliver to my said sons said Twenty Thousand (20,000) shares and any stock dividends thereon, or such part thereof as they shall from time to time elect to purchase, at one-half (½) the average market price per share as hereinafter defined, each son to be entitled in the aggregate to one-half (½) of said Twenty Thousand (20,000) shares and stock dividends, unless the other should fail or refuse to purchase his full one-half (½) of the total. For the purpose of this paragraph average market price per share during any calendar month shall be the mean between the high and the low of the market price of said stock during the six (6) calendar months immediately preceding the date of the particular purchase, and the price at which my sons shall be entitled to purchase said stock from time to time shall be one-half (½) said average market price. The net proceeds of each such sale and the net cash dividends from said stock (or so much of the stock as shall not have been sold to my sons) after deduction of proper charges and expenses applicable thereto, shall be paid to the following in the proportions indicated:

"The Mack Foundation (created by me during my lifetime 45%

"Endownment Fund, Westminster College, New Wilmington, Pa., 20%

"Bob Jones College, Cleveland, Tennessee, 20%

"Southwestern Presbyterian Sanatorium, Albuquerque, New Mexico, 15%

"At the expiration of ten years from the date of my death, such part of said twenty thousand (20,000) shares of capital stock and stock dividends thereon as my said sons shall have failed or refused to purchase shall be sold to any purchaser or purchasers at the best price obtainable, as soon as conveniently may be and as soon as may be for the best interest of my estate, and the proceeds thereof shall be paid to the afore-mentioned institutions in the percentages indicated. My Trustees may, however, at their discretion, if so requested by my sons or either of them, extend beyond said ten year period the time within which said sons or either of them may purchase the shares of stock then remaining unsold, but such extension shall in no event exceed a period of two years and six months."

The 20,000 shares of stock of G. C. Murphy Company disposed of in the aforesaid paragraph 8 (b) of the will were appraised by the United States for Federal estate tax purposes at a value of $1,241,750. Against this valuation there was allowed a net exemption for charities of $474,375, arrived at by determining the interest of the charities in the shares of stock to be of a value of $620,875, less 10 percent of the Pennsylvania inheritance tax value, or $146,500.

Since testator's death his two sons have exercised their option under paragraph 8 (b) of the will and have purchased the entire 20,000 shares of stock. John Gordon Mack has acquired 10,000 shares, paying to the executors therefor the total sum of $372,000. James S. Mack has acquired 10,000 shares, paying to the executors therefor the total of $397,843.75. The prices paid by the sons represent in each instance one half of the average market price of shares for the six months preceding the purchases.

The total payments of $769,843.75 by decedent's sons for the 20,000 shares of stock, less Pennsylvania transfer inheritance tax, plus cash income of $172,312.22,

will go to the charities under the terms of the will.

The relevant portions of the Pennsylvania Apportionment Act of July 2, 1937, P. L. 2762, 20 PS §844, are the following:

"Whenever . . . an executor . . . has paid an estate tax . . . upon or with respect to any property required to be included in the gross estate of a decedent . . . the amount of the tax so paid, except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made . . . in the proportion . . . that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate, except that, in making such proration, allowances shall be made for any exemptions granted by the Act imposing the tax, and for any deductions allowed by such act, for the purpose of arriving at the value of the net estate, and except that in cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years or for life, or other temporary interest in any property or fund, the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property . . . without apportionment between remainders and temporary estates . . . the term 'persons interested in the estate' shall, . . . include all persons who may be entitled to receive . . . any property or interest which is required to be included in the gross estate of a decedent."

The charities which are remaindermen under paragraph 8 (b) of the will assert that they are exempt from liability in this proration proceeding because of the provision in section 812 of the Internal Revenue

Code which allows bequests to charities to be deducted from the value of the gross estate in determining the net taxable estate. Under the Pennsylvania Apportionment Act of 1937 they contend they do not receive ". . . any property or interest which is required to be included in the gross estate of a decedent" and are therefore not ". . . 'persons interested in the estate' . . ."among whom the tax liability is apportioned. They assert also that they are relieved of liability by the provision of the Apportionment Act of 1937 ". . . except that, in making such proration, allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act, for the purpose of arriving at the value of the net estate, . . ." They cite Harvey Estate, 350 Pa. 53, in support of their position. They assert that the option given testator's sons to purchase the shares of stock is a bequest of property (citing Dilworth's Estate, 243 Pa. 475) which is required to be included in the gross estate for Federal estate tax purposes.

Testator's sons contend they have no liability in proration proceedings for any part of the estate tax arising from their option to purchase the 20,000 shares of stock under the terms of paragraph 8 (b) of the will. They assert that testator has directed in his will that they are not to be liable for any estate tax applicable to the shares. The language of the will relied upon is that included in paragraph 8 (b) which provides: "The net proceeds of each such sale . . . *after deduction of proper charges and expenses applicable thereto,* shall be paid to the following . . ." (Then follow the names of the indicated charities.) (Italics supplied.) It is asserted that the term ". . . proper charges and expenses . . ." includes any prorated Federal or State estate tax liability. This position is supported in the report filed by Ralph J. McAllister, Esq., guardian and trustee ad litem for the living children and children in

posse of James S. Mack and John Gordon Mack. In support of this position, Brown's Estate, 208 Pa. 161, and Jeffery's Estate, 333 Pa. 15, are cited. Testator's sons further contend that the option given them under the will is a ". . . temporary interest . . ." under the Apportionment Act, obliging the tax liability to be borne by the corpus of the fund to be received by the charities.

The auditing judge concludes that the language ". . . proper charges and expenses applicable thereto . . ." (i. e., the sales of stock and the proceeds thereof) was intended by testator to include Federal and State estate taxes. As held in Jeffery's Estate, supra, at pages 18 and 19:

"The testator is presumed to have known that the tax was payable out of his property. The will shows that he intended to benefit his wife and daughter, a purpose that would be frustrated if all he gave them was taken for estate taxes in part payable out of trust property. He had the power to direct apportionment: Sec. 314 (b) Revenue Act 1926, 26 USCA 426 (b) ; (see also Baily's Estate, 290 Pa. 3, 137 A. 733), and exercised the power by charging the trust property with the '*costs, charges*, and *expenses* of said trust estate'; the words '*charges*' and '*expenses*' show such intention in the circumstances." (Italics supplied.)

The aforesaid language of paragraph 8 (b) of the will is a direction by testator that the estate tax be paid from the remainder which goes to the indicated charities. This conclusion is supported by a reading of the whole will, which demonstrates testator's intention to prefer the members of his family over charities. An example of this is in paragraph 10 of the will, which is as follows:

"There are several charities, schools and colleges for which I intend to make provision in the future, but if my death should occur before I do so, I trust that my

wife, MARGARET L. MACK, and my sons JOHN GORDON MACK and JAMES S. MACK will, in due time, do what I feel I cannot do at this time in justice to the members of my family."

In the decree to be entered the estate tax arising from the disposition of the 20,000 shares of stock of G. C. Murphy Company under paragraph 8 (b) of the will must be apportioned to the fund which the charities take in remainder.

Paragraph 8 (c) gives the net income from the remainder of the estate to the widow for life, with the right of the widow to take 50 percent of the principal, and by section 8 (d) the widow is given the power of appointment by will at her death, which power she released. Section 8 (e) provides for the distribution of the remaining balance of the trust on the death of the widow, one half to James S. Mack when he attains the age of 40 years, and the other one half to be held in trust and the net income paid to John Gordon Mack. In case of the death of James S. Mack before he attains 40 years and in case of the death of John Gordon Mack, each share shall be paid to the surviving issue, or in default of surviving issue to his surviving brother or the living issue of the surviving brother if he should be deceased.

Under the provisions of the Apportionment Act of 1937 the property bequeathed under section 8 (c) shall pay its proportionate share of the estate tax, which shall be paid out of the corpus of the estate without apportionment between the life estates and the remainders.

The entireties real estate and the proceeds of the life insurance policies payable to Margaret L. Mack, James S. Mack and John Gordon Mack were included in the net taxable estate and must pay their proportionate share of the tax.

Exhibit C, the life insurance trust, created April 28, 1933, provides that the trustees pay out of the net income, after deduction of the necessary expenses and charges, $100 a month each to Margaret L. Mack and Minnie E. Briggs, the balance of this income to be devoted to the upkeep of decedent's Indiana County realty, with any excess of income payable to the Mack Foundation. On February 9, 1954, the income and principal, except enough to provide the monthly sums to Margaret L. Mack and Minnie E. Briggs, is payable to the Mack Foundation, which also receives any balance remaining upon the death of Margaret L. Mack and Minnie E. Briggs.

The Mack Foundation is a charitable trust.

The third paragraph of the insurance trust agreement, exhibit C provides:

"The trust estate hereby created and the net income thereof, after deduction of the necessary expenses and charges, shall be devoted to the following uses and purposes:"

Under the rule in Jeffery's Estate, supra, the provision in the trust agreement to pay the necessary expenses and charges includes estate taxes which must be paid out of the corpus of the trust estate, as provided in the trust agreement.

Exhibit D, a deed of trust made August 22, 1935, provides for the payment of the net income thereof to John Gordon Mack for life, with distribution of 50 percent of the corpus to John Gordon Mack at certain times until he attains 45 years of age. On the death of John Gordon Mack the principal is to be divided among his children, with provision for payment to others in the event he dies without children.

Exhibit E, a deed of trust dated August 22, 1935, provides for the payment of net income to James S. Mack for life, with distribution of 50 percent of corpus

to James S. Mack at certain times until he attains 45 years. On the death of James S. Mack the principal is to be divided among his children, with provision for payment to others in case he dies without children.

Exhibit F, a deed of trust dated December 29, 1936, provides that income shall be paid to each beneficiary until they attain respectively the age of 27 years. The corpus is to be distributed, one half when each beneficiary attains 24 years and the balance when each attains 27 years.

Exhibit G, a deed of trust dated August 22, 1935, provides that income shall be paid to Margaret L. Mack for life, with power of appointment of corpus by her will, or on failure to exercise the power of appointment, to the Mack Foundation.

Exhibit I, a deed of trust dated January 19, 1937, provides that one third of the income shall be paid to Mary Louise Groat, one third thereof to James Groat, and one third thereof to John M. Groat, until each attains 24 years of age, when one third of the principal shall be paid to each.

Exhibit J, deed of trust dated January 19, 1937, provides for the income thereof to be paid to Velda Ruth McHenry, Vieda Lila McHenry and James Sephus McHenry until each attains 27 years, when one third of the principal shall be paid to each.

All of the above deeds of trust (exhibits D, E, F, G, I and J) give an interest in income for life or years, and under the provisions of the Apportionment Act of 1937 the estate tax liability created by each of these trusts must be charged against the corpus in each instance.

A decree will be entered in accordance with this opinion.